IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Bradley J. Burdue,                                      Case No. 3:13CV1633

            Plaintiff

           v.                                             **ORDER**

R. Dale Donegan, et al.,

            Defendants

This is a procedural-due-process case arising under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

From 2001 until 2013, the Federal Aviation Administration appointed the plaintiff, Bradley Burdue, to be a "Designated Airworthiness Representative-Maintenance," also known as a "DAR-T." The designation allowed Burdue, who was not an employee of the FAA, to act on the agency's behalf, inspecting airplanes to determine their airworthiness.

In March, 2013, the FAA terminated the designation "for cause" after determining that Burdue violated conflict-of-interest regulations and a prohibition against working outside his geographical zone.

Burdue contends in this suit that the for-cause termination deprived him of his liberty interests in his reputation and his ability to pursue a career in the aviation industry. He also maintains that the FAA's post-termination appeals process did not comply with the Fourteenth Amendment.

Jurisdiction is proper under 28 U.S.C. § 1331.

Pending is the defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment. (Doc. 39). For the following reasons, I grant the motion.

**Background**

Federal law allows the FAA to "delegate to a qualified private person" the authority to certify aircraft as "airworthy" and to conduct whatever inspections, tests, and examinations are necessary to make an airworthiness determination. 49 U.S.C. § 44702(d)(1). The FAA has appointed a group of private individuals – the "designated airworthiness representatives" or "DARs" – to perform these functions on the FAA's behalf. *See* 14 C.F.R. § 183.33.

DARs are subject to regulations, supervision, and review that the FAA's Administrator prescribes. 49 U.S.C. § 44702(d)(1).

These regulations prohibit, *inter alia*, a DAR from maintaining a financial interest on both sides of an application for an airworthiness certificate. Thus, no DAR may perform "any mechanical, maintenance, or inspection function on behalf of an applicant . . . or products for which an airworthiness certificate or approval is sought." FAA Order 8100.8C, ¶1413(f) (cancelled Oct. 28, 2011); FAA Order 8100.8D, ¶1410(f), *available at* https://goo.gl/neQnzl.

The Administrator may "rescind" a DAR designation "at any time for any reason the Administrator considers appropriate." 49 U.S.C. § 44702(d)(2). This rescission can be "for cause," which indicates "a negative finding based on a designee's performance," or "not-for-cause," which "can be for any reason not specific to a designee's performance." FAA Order 8900.1, ¶¶13-464, 13-464(A), *available at* https://goo.gl/CeTRxF.

**A. Burdue's Work as a DAR-T**

Burdue is "an aviation professional with more than 25 years of experience in the field." (Doc. 43–15 at ¶25). In 2001, he received a DAR-T designation to work in the Cleveland Flight Standards District Office (the Cleveland Office). (*Id.* at ¶¶30–32). Burdue performed DAR-T work for twelve years without incident. (Doc. 28 at ¶28).

One function that Burdue could perform with a DAR-T designation was issuing "export airworthiness approvals." 14 C.F.R. § 21.39.

This approval certifies that an airplane intended for export from the United States is both "airworthy" under American law and in compliance with the importing country's requirements, 14 C.F.R. §§ 21.1(b)(1), 21.329. To determine whether an aircraft is airworthy, the DAR must, *inter alia*, physically inspect the aircraft. FAA Order 8130.2G, ch. 5, § 1, ¶¶500(d), 512(f), *available at* https://goo.gl/2n4xcY.

Under FAA policies and procedures, a DAR can issue export approvals only within his geographic zone. *See* FAA Order 8900.1, vol. 13, ch. 5, § 1, ¶13-409(A). If the DAR wishes to examine an aircraft outside of that zone, he must obtain prior approval from his managing office and the manager of the zone where he plans to work. *Id.* The DAR-T may not perform any FAA-delegated function until both managers approve his request for a geographic expansion. *Id.*

On March 1, 2013, Burdue submitted a request to the Cleveland Office to issue export airworthiness approvals for seven aircraft in Florida, including a Cessna 150L with registration number N11525.  Four days later, he asked to issue approvals for two more aircraft in Florida. (Doc. 43–2 at 54, 58).

3

The Cleveland Office forwarded the requests to Carlos Grillo, the Aviation Safety Inspector at the South Florida Flight Standards Division Office (the South Florida Office). Before Grillo acted on Burdue's requests, Burdue traveled to Florida and, according to the agency, began "activity related to the export approvals[.]" (Doc. 39 at 21; *see also* Doc. 43–2 at 65 (email from Burdue acknowledging he "complete[d] inspections of said aircraft in order to facilitate a quick Export once my request came back from South Florida")).

On March 12, Grillo rejected Burdue's application for a geographical expansion, citing concerns about "the amount of aircraft [Burdue planned to inspect] on the time frame requested." (Doc. 43–2 at 60).

On March 14, the FAA's Special Emphasis Investigation Team (SEIT), which was on patrol at the South Florida Office, noticed the Cessna N11525 – for which Burdue intended to issue an export approval – already in a shipping container. (Doc. 43–1 at 68).

Jose Capote, the owner of the company exporting the Cessna, told defendants and SEIT employees R. Dale Donegan and Mike Boler that Burdue had begun inspecting the aircraft the previous week, and that he "had completed his inspection" on March 13. (*Id.*).

Capote also explained that Burdue had "inspected, taken photos, and inspected the records of four (4) aircraft," but that these aircraft were not ready for export. (*Id.* at 69). When Donegan and Boler asked if "Mr. Burdue had already been compensated," Capote told them that "Mr. Burdue had been paid $5000.00 for his services on the four aircraft." (*Id.*).

Donegan and Boler summarized their findings in an "Inspectors Report" dated March 18:

> It became very obvious that Mr. Burdue was performing DAR functions when not authorized to do so. We are aware, at least in the four cases mentioned above, that [Burdue] had already received payment for services that he was not authorized to

4

> perform. These [aircraft] owners are now placed in a position to forfeit the money already paid, or to seek remedy in civil court.
>
> SEIT views the nature of the above, especially in this case, as heinous when compared to the expected behavior of those individuals chosen to represent the Administrator. The DAR clearly misrepresented himself to the owners of the numerous aircraft listed above, and in-turn, his actions reflect negatively on the FAA. FAA policy clearly establishes designee qualifications include "a high degree of integrity, a cooperative attitude and ability to exercise sound judgment." These character traits are certainly not evident in the actions demonstrated by this DAR.

(*Id.*).

In light of this report, the SEIT decided to examine Burdue's previous export approvals. Investigators discovered that Burdue had issued eight export approvals for aircraft registered to companies that he either owned or managed and one export approval for a plane that his wife, in her capacity as the owner's agent, offered for export. (Doc. 43–1 at 1, 3–4).

Based on these conflict-of-interest infractions, as well as Burdue's inspection of the Cessna without prior approval to work in Florida, the SEIT concluded, on March 20, 2013, that Burdue misused his DAR-T authority. (*Id.* at 1–2). It recommended that defendant Leroy Moore, the manager of the Cleveland Office, terminate Burdue's DAR-T designation. (*Id.* at 2).

### B. Termination and Appeal

On April 29, Moore terminated Burdue's DAR-T designation. (Doc. 28–1 at 2–3). In a letter to Burdue, Moore explained:

> Your designation is being terminated due to the misuse of your authority, during which you failed to maintain the highest degree of objectivity while performing authorized functions on behalf of the FAA. Based on documents provided by the FAA's Special Emphasis Investigation Team (SEIT), we found that you acted in the following manner:
>
> • Between the dates of March 1, 2013 and March 14, 2013, you acted contrary to Orders 8100.8D, Chapter 14, paragraph 1411; 8900.1,

5

> Vol. 13, Chapter 5, Section 1, paragraph 13-409B; and 8130.2G, Chapter 5, Section 2, paragraph 506(d).
>
> • Between the dates of April 4, 2011 and April 23, 2012, you acted contrary to Order 8100.8, Chapter 14, paragraphs 1410(f) and 1401(d).
>
> You may submit a request for appeal in writing to this office no later than 14 calendar-days from the date of receipt of this letter. At that time, you should include any evidence or statement concerning this matter with your written request for appeal. You will be notified of the outcome of the appeal within 60 calendar-days after our receipt of your written request for appeal.

(*Id.*).

Burdue, through counsel, submitted a written notice of appeal on May 7, 2013.

On May 15, Burdue filed an appeal brief in which he denied that he had either worked outside his geographical zone without permission or violated the agency's conflict-of-interest rules. (Doc. 43–2 at 5–21).

Two days later, Moore notified Burdue that the FAA had accepted his request for an appeal and forwarded it to the Great Lakes Region Flight Standards Division. He explained that that office would "inform you of [its] intent to convene a regional appeal panel in order to review the termination decision and make a final decision within 45 days." (Doc. 28–1 at 7).

On June 21, Burdue submitted a supplemental appeal brief that discussed materials he had recently obtained via a Freedom of Information Act request. (Doc. 43–2 at 80–86).[1] According to this pleading, Burdue's direct supervisors in the Cleveland Office "actively refuted in writing both

---

[1] Because this supplemental pleading was untimely, Burdue's counsel asked the agency for confirmation that the Appeal Panel had, in fact, received it. *Burdue v. Donegan*, 774 F.3d 1076, 1079 (6th Cir. 2014). Defendant J.D. Martin, the General Aviation Technical Support Branch Manager for the Great Lakes Region Flight Standards Division, advised counsel by email, on June 28, 2013, that the Appeal Panel had received the supplemental brief. (Doc. 28–1 at 20).

of Mr. Donegan's claims, namely, that Mr. Burdue engaged in unauthorized DAR functions and used aircraft title procedures that led to a conflict of interest." (*Id.* at 85).

The appeal panel upheld the for-cause termination on July 2. (Doc. 28–1 at 21).

### C. Litigation

Burdue brought this *Bivens* action in September, 2013, alleging: 1) the termination of his DAR-T designation deprived him of his liberty and property interests without due process of law; and 2) wrongful termination of the DAR-T designation. (Doc. 1 at 14–17).

Shortly after filing the complaint, Burdue petitioned the United States Court of Appeals for the Sixth Circuit for review of the FAA's order terminating his DAR-T designation. I stayed the proceedings in this court pending the Sixth Circuit's decision, and the Circuit ultimately concluded: 1) the FAA's decision terminating the DAR-T designation was not subject to judicial review; and 2) Burdue's due-process claim was the proper subject of a *Bivens* action in this court. *Burdue*, *supra*, 774 F.3d at 1080–85.

Back in this court, Burdue filed a second amended complaint against SEIT members Donegan and Boler, in their individual capacities; Russ Davis, Manager of the Aviation Special Operations and Security Staff, in his individual capacity; Martin, of the Great Lakes Regional Office, in his individual capacity; Moore, of the Cleveland Office, in his individual capacity; and Michael Huerta, in his official capacity as the FAA Administrator.

Burdue asserted three claims: 1) a procedural-due-process claim stemming from the termination of his DAR-T designation without adequate notice or an opportunity to be heard; 2) a violation of the Administrative Procedure Act; and 3) a wrongful-termination-of-agency-designation claim. (Doc. 28 at ¶¶87–112).

After the government filed its pending motion, Burdue withdrew his second and third claims and his claim that the defendants deprived him of a property interest. (Doc. 43 at 8, 40–41).

## Standard of Review

A complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

I may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).[2]

## Discussion

Burdue's remaining claim is that, in terminating his DAR-T designation for cause, the defendants "affected his protected liberty interests in significant ways." (Doc. 43 at 36).

After losing his DAR-T designation, Burdue contends that he: 1) did not receive a "fast track" job offer at the Cleveland Office, even though "he had been told [before losing his DAR-T]

---

[2] In deciding the motion, I have considered principally the allegations in the second amended complaint and the many exhibits to which it refers. I have also relied on Burdue's declaration, which he attached, not to his complaint, but to his opposition to the motion to dismiss. I accordingly treat the motion as a 12(b)(6) motion, rather than one for summary judgment. *Cf.* Fed. R. Civ. P. 12(d).

he would get the next available slot"; 2) is ineligible to apply for at least ten other FAA designations that would be useful to him; 3) "had to self-disclose his termination 'for cause' to prospective employers . . . as a material consideration in their employment decision"; and 4) "has suffered damage to his good name and reputation" and "lost a significant income stream." (*Id.* at 38).

Finally, Burdue alleges that the FAA did not provide him with constitutionally sufficient notice of why it terminated his DAR-T designation or an adequate opportunity to be heard during the appeals process.

### A. Legal Framework

In a *Bivens* case, the plaintiff must allege "(1) that he or she was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of [federal] law." *Robertson v. Lucas*, 753 F.3d 606, 614 (6th Cir. 2014).

To state a procedural-due-process claim, the plaintiff must "first demonstrate the existence of a protected liberty or property interest." *Joelson v. U.S.*, 86 F.3d 1413, 1420 (6th Cir. 1996). Only then will "the court consider whether the process provided the plaintiff in conjunction with the deprivation, or lack thereof, violated due process." *Warren v. City of Athens*, 411 F.3d 697, 708 (6th Cir. 2005).

### B. Liberty Interest

"[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989).

"However, defamation alone is not enough to invoke due process concerns." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002). Instead, "[s]ome alteration of a right or status previously

recognized by state law, such as employment, must accompany the damage to reputation." *Id.* (internal quotation marks omitted).

This is the so-called "stigma plus" test that derives from *Paul v. Davis*, 424 U.S. 693 (1976).

The Sixth Circuit applies a five-factor test to determine whether a plaintiff has made out a "stigma plus" claim:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. ... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. ...Third, the stigmatizing statements or charges must be made public. ... Fourth, the plaintiff must claim that the charges made against him were false. ... Lastly, the public dissemination must have been voluntary.

*Quinn*, *supra*, 293 F.3d at 320.[3]

"The Sixth Circuit Court of Appeals has found that 'to establish a deprivation of a protected liberty interest in the employment context, a plaintiff must demonstrate stigmatizing governmental action which so negatively affects his reputation that it effectively forecloses the opportunity to practice a chosen profession.'" *Parrino v. Sebelius*, 155 F. Supp. 3d 714, 721–22 (W.D. Ky. 2015) (quoting *Joelson*, *supra*, 86 F.3d at 1420 (internal brackets omitted)).

"A charge that merely makes a plaintiff less attractive to other employers but leaves open a definite range of opportunity does not constitute a liberty deprivation." *Ludwig v. Bd. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997).

---

[3] Though the Sixth Circuit established this framework in 1997, and despite the parties' "briefs" running collectively to some 160 pages, neither side discusses whether Burdue stated a plausible liberty-interest claim under the Circuit's controlling framework.

If a plaintiff shows that "he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Quinn*, *supra*, 293 F.3d at 320.

### 1. Stigmatizing Statements

#### a. Moore

Defendants gave two reasons for terminating Burdue's DAR-T designation: 1) Burdue's violation of conflict-of-interest rules; and 2) Burdue performed DAR-T work outside his geographic zone without prior approval.

Defendant Moore referenced both grounds in his letter to Burdue on April 29, 2013, terminating the designation. Moore repeated these statements in his letter to Burdue's counsel on May 17, 2013. (Doc. 28–1 at 2, 7–8). Burdue does not allege, however, that anything Moore said in these letters was stigmatizing – and indeed, there is no basis for such an allegation.

Moore's accusation that Burdue performed work outside his designated geographical zone was a straightforward charge that Burdue either performed incompetently or failed to live up to the agency's standards. Such an accusation is not actionable under the Sixth Circuit's "stigma plus" framework. *Joelson*, *supra*, 86 F.3d at 1420–21 ("Liberty interests . . . are not implicated . . . by allegations of improper or inadequate performance").

Likewise, Moore's allegation that Burdue violated conflict-of-interest standards did not "inherently impl[y] that [Burdue] was dishonest, immoral, criminal, racist, or the like." *Mills v. Iowa*, 895 F. Supp. 2d 944, 967 (S.D. Iowa 2012) (statements branding plaintiff as operating under a conflict of interest during university's investigation into an on-campus sexual assault did not support "stigma plus" claim).

11

Moore, who did not use the phrase "conflict of interest," noted only that Burdue failed to maintain the required degree of "objectivity" that certain opaquely numbered FAA orders required of DARs. That Moore deemed Burdue to lack "objectivity" is not stigmatizing. *See Loeher v. Ventura Cnty. Cmty. Coll. Dist.*, 743 F.2d 1310, 1318 (9th Cir. 1984) (publicized charge that college supervisor engaged in conflict of interest was not actionable under Due Process Clause); *Norbeck v. Davenport Cmty. Sch. Dist.*, 545 F.2d 63, 69 (8th Cir. 1976) (allegation that plaintiff operated under conflict of interest amounted to charge of "poor judgment and not dishonesty").

### b. Donegan and Boler

Burdue alleges that defendants Donegan and Boler made "false and defamatory statements" about him in their report of March 18, 2013. (Doc. 28 at ¶35). That was the report in which they suggested Burdue: 1) lacked the "high degree of integrity" that DARs should have; 2) "misrepresented himself" to the owners of the aircraft he planned to inspect in Florida; 3) was subject to a civil suit by the aircraft owners to recover the ill-gotten funds he accepted without approval to work in Florida; and 4) had displayed overall "heinous" behavior.

These statements are stigmatizing, as they depict Burdue as dishonest, without integrity, and perhaps even being a thief, and they can support a "stigma plus" claim.

### 2. Disclosure

Nevertheless, Burdue's claim fails because he has not plausibly alleged that the defendants publicly disclosed any stigmatizing statement. *Joelson, supra*, 86 F.3d at 1420 ("A plaintiff must also allege in his or her complaint that the stigmatizing information was publicly disclosed.").

Nowhere in his complaint does Burdue identify any instance where a defendant publicly disclosed either the fact of the for-cause termination (which is not stigmatizing in any event), the

12

substance of Moore's letter (which, likewise, is not stigmatizing), or the substance of Donegan and Boler's report.

To be sure, Burdue alleges "[o]n information and belief, employees of the FAA have made stigmatizing disclosures to persons outside the agency about the termination of Mr. Burdue's DAR designation for cause." (Doc. 28 at ¶42.).

But that allegation is implausible for at least three reasons.

First, Burdue has not alleged that these "employees of the FAA" are defendants in this case. *Cf. Moore v. U.S. Agric. Dep't*, 2015 WL 65182, *3 (E.D. Ky.) ("To reiterate, liability for an alleged violation of one's civil rights cannot be imposed on any defendant absent that defendant's personal actions, and the doctrine of *respondeat superior* is not a basis for liability under *Bivens*.").

Second, Burdue has not identified the substance of the "stigmatizing disclosures" these FAA employees made. As discussed above, only Donegan and Boler's statements are stigmatizing, but the complaint provides no basis for inferring that these statements became public.

Third, and most importantly, pleading the public-disclosure element "on information and belief" is impermissible in the circumstances of this case.

"[T]he mere fact that an allegation is prefaced with the phrase 'upon information and belief' does not automatically render it a conclusory statement, so long as it is plausibly supported by well-pled factual allegations." *Cap City Dental Lab, LLC v. Ladd*, 2016 WL 4573993, *6 (S.D. Ohio).

"[Q]ualifying words such as 'upon information and belief' and 'appear' are the appropriate manner to plead when a plaintiff is drawing reasonable inferences from facts." *Antioch Litig. Trust v. McDermott, Will & Emery LLP*, 738 F. Supp. 2d 758, 765 (S.D. Ohio 2010). Pleading on information and belief is also appropriate when the plaintiff "lack[s] personal knowledge of a fact,

13

but ha[s] 'sufficient data to justify interposing an allegation on the subject' or [must] 'rely on information furnished by others." *Starkey v. JPMorgan Chase, NA*, 573 F. App'x 444, 448 (6th Cir. 2014) (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012)).

"'However, pleading on information and belief is not an appropriate form of pleading if the matter is within the personal knowledge of the pleader.'" *Id.* (quoting Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1224 (3d ed. 2012).

The crux of Burdue's claim is that the defendants tarnished his reputation and damaged his employment prospects by disseminating false and defamatory statements about him.

But if that is the case, Burdue should be able to identify how or when the defendants made those statements public; otherwise there is no basis for attributing Burdue's diminished standing in the aviation field to the statements that Donegan and Boler made in an internal FAA document. *Cf. Hade v. City of Fremont*, 246 F. Supp. 2d 837, 845 (N.D. Ohio 2003) ("The purpose of the [public-disclosure] requirement is to limit a constitutional claim to those instances where the stigmatizing charges . . . have been or are likely to be disseminated widely enough to damage the discharged employee's standing in the community or foreclose future job opportunities.").

In other words, if there had been a public disclosure, that would be something "within [Burdue's] personal knowledge," and pleading that element on information and belief is therefore "not an appropriate form of pleading." *Starkey*, *supra*, 573 F. App'x at 448.

Finally, Burdue alleges that, in applying for jobs after losing his DAR-T designation, he had to "self-disclose his termination 'for cause' to prospective employers." (Doc. 43 at 38).

But these are disclosures that Burdue himself made, and they cannot support his "stigma plus" claim. In any event, the mere fact that Burdue lost his DAR-T designation "for cause" is not

14

stigmatizing. *See* FAA Order 8900.1, ¶¶13-464, 13-464(A) (for-cause termination indicates only negative performance); *Joelson*, *supra*, 86 F.3d at 1420–21 ("Liberty interests . . . are not implicated . . . by allegations of improper or inadequate performance").

For these reasons, Burdue has not plausibly alleged that defendants publicly disclosed any stigmatizing statements.

### 3. Loss of a Protected Right or Status

Even if Burdue had alleged that defendants publicly stigmatized him, he has not plausibly alleged that some "alteration of a right or status previously recognized by state law" accompanied the damage to his reputation. *Quinn*, *supra*, 293 F.3d at 319 (internal quotation marks omitted).

Burdue points to: 1) the loss of an "open 'fast track' offer of employment with the FAA's Cleveland office"; 2) his ineligibility to apply for other FAA designations; 3) lost prospects "for other employment with the FAA, with other government agencies and in private sector companies; and 4) "difficulty or inability to obtain a security clearance." (Doc. 43–15 at ¶46).

None of these, however, amount to legally protected "rights." They are merely privileges or benefits for which Burdue had, at best, a unilateral expectation. Neither Burdue's complaint nor his opposition brief identifies any authority for the proposition that he had a "right" to either the job offer at the Cleveland Office, any of the other FAA designations, other unspecified employment opportunities, or a security clearance.

### 4. Opportunity to Practice a Chosen Profession

Lastly, Burdue has not plausibly alleged that defendants' conduct "so negatively affect[ed] his reputation that it effectively forecloses the opportunity" to work in the aviation industry. *Joelson*, *supra*, 86 F.3d at 1420. Indeed, his own declaration refutes any such contention.

After the for-cause termination, the declaration states, Burdue worked as a "Chief Pilot and Director of Operations for a Part 135 Air Charter Operation" in Florida, earning $80,000 per year. (Doc. 43–15 at ¶147). Thereafter, he returned to Toledo and worked as an "aircraft maintenance technician," earning $60,000. (*Id.*). Presently, the declaration concludes, Burdue earns $75,000. (*Id.*).

Though Burdue is certainly "less attractive to other employers" by virtue of the for-cause termination, his own declaration makes clear that "a definite range of opportunity" in the aviation industry remains open to him. *Ludwig*, *supra*, 123 F.3d at 410; *cf. Lopez v. FAA*, 318 F.3d 242, 249 (D.C. Cir. 2003) (decision by FAA not to renew plaintiff's appointment as a "Designated Engineering Representative" did not deprive plaintiff of liberty interest because plaintiff "has not been deprived of his career as an engineer").

\* \* \*

In sum, Burdue has not plausibly alleged a "stigma plus" claim. I therefore grant the defendants' motion to dismiss for failure to state a claim.

### C. Name-Clearing Hearing

The Sixth Circuit holds that, in the employment context, an employer's disclosure of false, stigmatizing information in the course of a decision to fire the employee entitles the employee to "an opportunity to clear his name." *Quinn*, *supra*, 293 F.3d at 320.

"It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process." *Hade*, *supra*, 246 F. Supp. 2d at 842; *see also O'Brien v. City of Saginaw*, 2011 WL 3799649, \*4 (E.D. Mich.) ("Critically, however, a due process violation occurs only when upon request for a nameclearing hearing, the [plaintiff] is denied.") (brackets in original).

Here, there is no question Burdue received an internal FAA appeal of the termination of his DAR-T designation, and that his appeals briefs flatly denied the charges against him. Burdue's claim, however, is that the procedures the FAA used to resolve the appeal were insufficient.

I understand that "a name-clearing hearing need only provide an opportunity to clear one's name and need not comply with formal procedures to be valid." *Chilingirian*, *supra*, 882 F.2d at 206. But given that the briefs do not tie their discussions of the adequacy of the FAA appeals process to the Sixth Circuit's standards for a name-clearing hearing, I do not decide this issue.

## Conclusion

It is, therefore

ORDERED THAT defendants' motion to dismiss for failure to state claim on which relief can be granted (Doc. 39) be, and the same hereby is, granted with prejudice.

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge